THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT DIGGS, Defendant-Appellant.

First District (6th Division)   Nos. 1—90—3620, 1—91—1271 cons.

Opinion filed March 12, 1993.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Lisa M. Travis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

The relevant facts of this appeal, a consolidation of two criminal jury trials from the circuit court, can be briefly summarized. Defendant, Robert Diggs, seeks to overturn his convictions for the 1989 sexual assault of two women, and the robbery and residential burglary of a third woman on Chicago's north side. Defendant is a black man, the complainants are white women. While the trial court did allow defendant to question the jury regarding possible racial prejudice, defendant claims that the trial court's denial of his attorney's request to sequester and individually *voir dire* the jury violated his due process rights. Because defendant does not challenge the sufficiency of the evidence presented at trial, the only issue which need be addressed is whether the trial court committed error by denying defendant individual and sequestered *voir dire*.

In *Mu'Min v. Virginia* (1991), 500 U.S. 415, 424, 114 L. Ed. 2d 493, 505, 111 S. Ct. 1899, 1904, the Supreme Court explored the constitutional requirements of the *voir dire* process when a defendant is charged with committing violent acts against victims of another race. It stated:

"We enjoy more latitude in setting standards for *voir dire* in federal courts under our supervisory power than we have in interpreting the provisions of the Fourteenth Amendment with respect to *voir dire* in state courts. But, two parallel themes

emerge from both sets of cases: First, the possibility of racial prejudice against a black defendant charged with a violent crime against a white person is sufficiently real that the Fourteenth Amendment requires that inquiry be made into racial prejudice; second, the trial court retains great latitude in deciding what questions should be asked on *voir dire*." (500 U.S. at 424, 114 L. Ed. 2d at 505, 111 S. Ct. at 1904.)

For purposes of our review, *Mu'Min* stands for two propositions: first, a defendant who is denied the opportunity to inquire into the possible racial prejudices of the jury in racially sensitive cases such as this one is denied due process; second, however, a trial court's decision with regard to the extent and scope of that questioning need be reviewed on appeal only under an "abuse of discretion" standard.

Prior to both of the defendant's trials, the trial judge, who presided in both cases, questioned over 50 prospective jurors. He first questioned them in groups of 14, then asked questions of each venire member individually. Apparently, however, the entire venire panel was present for the questioning of each prospective juror. A review of the record indicates that the trial court was aware of the racially sensitive nature of the *voir dire* procedure. The record reflects that the following statement was made to prospective jurors as a group preceding defendant's first trial:

> "THE COURT: Let me ask you a question, but I will put it first this way: This case involves a—Mr. Diggs is a black man, an African-American. Some of the witnesses in this case are white females.
>
> Would there be anybody here that merely because of that racial difference would not be able to be fair and impartial to Mr. Diggs, fair to the People of the State of Illinois?"

None of the prospective jurors responded. Additionally, the trial court explicitly allowed the defense attorneys opportunity to question the venire from both trials regarding the factual backgrounds of the prospective jurors. In neither case, however, did defendant's counsel ask questions directly relating to racial bias.

■ Illinois Supreme Court Rule 234 sets out the general rule governing *voir dire*:

> "The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination

by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions." (134 Ill. 2d R. 234.)

In considering Rule 234, the Illinois Supreme Court has specifically stated, "the trial judge may, at his or her discretion, conduct individual *voir dire* out of the presence of other jurors but is not required to do so." (*People v. Neal* (1985), 111 Ill. 2d 180, 197-98, citing *People v. Newbury* (1972), 53 Ill. 2d 228, 241.) A corollary to this proposition is that due process, under both State and Federal constitutional analysis, does not mandate individual *voir dire*. "The purpose of *voir dire* is to assure the selection of an impartial panel of jurors who are free from bias or prejudice." (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 464; *People v. Jackson* (1977), 69 Ill. 2d 252, 260.) However, no precise technical test or formula exists for determining whether a prospective juror is impartial. (*People v. Washington* (1982), 104 Ill. App. 3d 386, 390.) The standard for evaluating a court's exercise of discretion during the *voir dire* is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present. *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 427.

■ Based upon a review of the record, and recognizing the wide discretion given the trial court in such matters, we conclude that the trial court did not abuse its discretion in the way in which it conducted *voir dire*. In defendant's first trial the trial court clearly made inquiry into the racial prejudices of the venire panel and allowed defendant's attorneys to pursue this line of questioning should they have so desired. While it is true that the trial court did not make inquiry into the racial prejudices of prospective jurors in the second trial, it must be noted that defendant's counsel did not propose such an inquiry or pursue this line of questioning when given the opportunity to do so, nor do the cases cited by defendant require the trial court to raise the possibility of racial bias *sua sponte* with the jury.

Because the refusal of the trial court to allow individual and sequestered *voir dire* was not an abuse of discretion, defendant's due process rights were not violated and his conviction is affirmed.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.